UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICKY DUDLEY, Individually and On Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN W.E. HAUB, ERIC CLAUS, BRENDA M. GALGANO, RONALD MARSHALL, SAMUEL MARTIN, THE YUCAIPA COMPANIES LLC, RONALD BURKLE and FREDERIC BRACE<br><br>Defendants. | Civil Action No.: 2:11-CV-05196 (WJM) (MF)<br><br><br><br><br>MOTION DATE: October 15, 2012 |

MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS THE AMENDED COMPLAINT AS TO THE
YUCAIPA COMPANIES LLC AND RONALD BURKLE

James E. Brandt (*pro hac vice*)
Jeff G. Hammel (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York  10022
(212) 906-1200

Jason B. Lattimore
LATHAM & WATKINS LLP
One Newark Center, 16th Floor
Newark, New Jersey  07101
(973) 639-1234

*Attorneys for Defendants*
*The Yucaipa Companies LLC and*
*Ronald Burkle*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

Preliminary Statement ............................................................................................... 1

Argument .................................................................................................................. 2

I. THE SECTION 10(B) CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ................................................................................. 2

    A. Plaintiffs Allege No Challenged Statements By Yucaipa or Mr. Burkle ................ 3

    B. Plaintiffs Allege No Disclosure Duty or Actionable Omission By Yucaipa or Mr. Burkle ................................................................................. 4

        1. Plaintiffs Allege No Disclosure Duty By Yucaipa or Mr. Burkle ............... 5

        2. Plaintiffs Allege No Plan By Yucaipa to Take Control of A&P ................. 6

    C. Plaintiffs Allege No Facts Establishing a "Strong Inference" of Scienter Against Yucaipa or Mr. Burkle ................................................................. 8

        1. The PSLRA Requires Facts Establishing a "Strong Inference" of Scienter ................................................................................. 8

        2. Plaintiffs Allege No Facts Establishing Any Inference of Scienter as to Yucaipa or Mr. Burkle ........................................................... 9

    D. Plaintiffs Do Not Allege The Required Element of "Loss Causation" .................. 12

II. THE SECTION 20(A) CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ............................................................................... 13

III. THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ..................... 14

Conclusion .............................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Atlantic Gypsum Co. v. Lloyds Int'l Corp.,*
  753 F. Supp. 505 (S.D.N.Y. 1990) .................................................................................. 10

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988) ............................................................................................................ 5

*Bird v. Moore Stephens P.C.*,
  No. 10-CV-1091 (DMC) (JAD), 2011 U.S. Dist. LEXIS 70071
  (D.N.J. June 29, 2011) ........................................................................................................ 9

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ................................................................................................ 7

*Campo v. Sears Holdings Corp.*,
  635 F. Supp. 2d 323 (S.D.N.Y. 2009) ........................................................................... 8, 12

*Chiarella v. U.S.*,
  445 U.S. 222 (1980) ............................................................................................................ 5

*City of Roseville Emps. Ret. Sys. v. EnergySolutions, Inc.*,
  814 F. Supp. 2d 395 (S.D.N.Y. 2011) ................................................................................. 4

*Copland v. Grumet*,
  No. 96-3351 (MLP), 1998 U.S. Dist. LEXIS 22466 (D.N.J. Jan. 9, 1998) ....................... 14

*Derobbio v. Harvest Cmtys. of Sioux City, Inc.*,
  No. 01-1120 (MLC), 2002 U.S. Dist. LEXIS 26706 (D.N.J. Oct. 30, 2002) ..................... 7

*Dirks v. SEC*,
  463 U.S. 646 (1983) ............................................................................................................ 5

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) .......................................................................................................... 12

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004) ................................................................................ 2, 3, 8, 12

*In re Adolor Corp. Sec. Litig.*,
  616 F. Supp. 2d 551 (E.D. Pa. 2009) ................................................................................ 11

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999) .......................................................................................... 8, 13

*In re Alpharma Inc. Sec. Litig*,
  372 F.3d 137 (3d Cir. 2004) .............................................................................................. 14

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ......................................................................................... 9

*In re Digital Island Sec. Litig.*,
    223 F. Supp. 2d 546 (D. Del. 2002) ............................................................................ 10

*In re Digital Island Sec. Litig.*,
    357 F.3d 322 (3d Cir. 2004) .................................................................................. 8, 10

*In re DVI, Inc. Sec. Litig.*,
    639 F.3d 623 (3d Cir. 2011) ....................................................................................... 12

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) .......................................................................... 7, 8

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
    Nos. 1658, 05-1151, 05-2367 (SRC), 2011 U.S. Dist. LEXIS 87578
    (D.N.J. Aug. 8, 2011) .................................................................................................. 9

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002) ....................................................................................... 3

*In re NAHC, Inc. Sec. Litig.*,
    No. 00-4020, 2001 U.S. Dist. LEXIS 16754 (E.D. Pa. Oct. 17, 2001) .................... 6, 7

*In re Party City Sec. Litig.*,
    147 F. Supp. 2d 282 (D.N.J. 2001) .............................................................................. 3

*In re Synchronoss Sec. Litig.*,
    705 F. Supp. 2d 367 (D.N.J. 2010) .............................................................................. 6

*In re Tellium, Inc. Sec. Litig.*,
    No. 02-cv-5878, 2005 U.S. Dist. LEXIS 26332 (D.N.J. Aug. 26, 2005) .............. 12, 13

*In re Textron, Inc.*,
    811 F. Supp. 2d 564 (D.R.I. 2011) .............................................................................. 4

*Inst'l Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ........................................................................................ 9

*Janus Capital Group, Inc. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011) ............................................................................................ 3, 4

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ...................................................................................... 10

*Laven v. Flanagan*,
    695 F. Supp. 800 (D.N.J. 1988) ................................................................................. 13

*Lentell v. Merrill Lynch & Co., Inc.*,
  396 F.3d 161, 173 (2d Cir. 2005) .............................................................................. 12

*Nat'l Jr. Baseball League v. PharmaNet Dev. Group, Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ............................................................... 7, 8, 12, 13

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) ............................................................................... 5, 6, 14

*Orlan v. Spongetech Delivery Sys. Inc.*,
  No. 10-CV-4093 (DLI) (JMA), 2012 U.S. Dist. LEXIS 44253
  (E.D.N.Y. Mar. 29, 2012) ............................................................................................ 4

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ....................................................................................... 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................... 9, 11

*Ulferts v. Franklin Resources, Inc.*,
  554 F. Supp. 2d 568 (D.N.J. 2008) .............................................................................. 5

*United States v. Schiff*,
  602 F.3d 152 (3d Cir. 2010) ........................................................................................ 5

*Winer Family Trust v. Queen*,
  503 F.3d 319 (3d Cir. 2007) ............................................................................. 4, 6, 11

*Zucker v. Quasha*,
  891 F. Supp. 1010 (D.N.J. 1995), *aff'd*, 82 F. 3d 408 (3d Cir. 1996) ...................... 6, 7

**STATUTES**

15 U.S.C. § 78u-4 ............................................................................................... 1, 3, 6

**RULES AND REGULATIONS**

17 C.F.R. § 240.10-b5(b) ......................................................................................... 3

Fed. R. Civ. P. 9(b) ............................................................................................... 1, 3

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 8

Defendants The Yucaipa Companies LLC ("Yucaipa") and Ronald Burkle submit this memorandum of law in support of their motion to dismiss the Amended Complaint (cited as "¶ _" and attached as Exhibit A to the Declaration of Jason B. Lattimore) pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 *et seq.*, 15 U.S.C. § 78u-4 *et seq.* ("PSLRA").[1]

### Preliminary Statement

Yucaipa is a private equity firm and Mr. Burkle is its chairman. In 2009, Yucaipa invested $115 million in shares of The Great Atlantic & Pacific Tea Company, Inc. ("A&P"), a supermarket chain that in 2010 filed for bankruptcy. Neither Yucaipa nor Mr. Burkle was an officer or director of A&P during the asserted class period, and neither is alleged to have made *any* statement to the market. Yet plaintiffs seek to allege against them the following "fraud":

- Yucaipa invested $115 million in, and "partnered" with, A&P even though Mr. Burkle "*knew [A&P] could not be turned around*" (¶¶ 3, 5 (emphasis added));

- Yucaipa and Mr. Burkle then "steer[ed]" A&P into bankruptcy (¶ 42)—wiping out their $115 million equity investment, while they invested still more money in A&P's notes (¶¶ 5, 7, 42); and

- Yucaipa and Mr. Burkle did this as part of a secret "plan to take over" A&P (¶ 5)—even though plaintiffs concede that Yucaipa and Mr. Burkle *did not take over A&P* and do not control it today. (¶¶ 79 n.6, 80.)

Plaintiffs' theory of fraud by Yucaipa and Mr. Burkle is absurd as a matter of common sense and states no claim as a matter of law.

*First*, Supreme Court precedent holds that securities fraud claims can be brought only against those who "made" or had "ultimate authority over" false statements—yet neither Yucaipa nor Mr. Burkle is alleged to have made or had such authority over any statement here.

---

[1]   Yucaipa and Mr. Burkle also rely upon, and incorporate by reference, the motion to dismiss submitted by the other defendants in this case.

1

*Second*, to the extent plaintiffs contend that Yucaipa and Mr. Burkle engaged in fraud by failing to speak—by not disclosing publicly their supposed plan to take control of A&P—that theory fails because the Amended Complaint pleads no facts (as it must under the PSLRA) establishing that Yucaipa or Mr. Burkle, as private investors, had any disclosure duty to A&P's shareholders and pleads no facts detailing such a plan—including whether it even existed.

*Third*, plaintiffs have pled no facts establishing Yucaipa's or Mr. Burkle's "scienter" (or intent to commit fraud).  They offer no explanation (factual or otherwise) for why these defendants would pursue an economically self-defeating plan to destroy $115 million of their own equity to try to take control of a company that they did not, in fact, end up controlling.

*Fourth*, plaintiffs have not established "loss causation" as to Yucaipa or Mr. Burkle, a mandatory element of securities fraud claims.  Nothing in the Amended Complaint even suggests that plaintiffs' loss—the share price decline associated with A&P's bankruptcy—was caused by the disclosure of an alleged takeover plan by Yucaipa and Mr. Burkle.

The claims against Yucaipa and Mr. Burkle are woefully inadequate.  They should be dismissed, with prejudice.

## Argument

### I. THE SECTION 10(B) CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

The Amended Complaint attempts to allege a claim for securities fraud under Section 10(b) (and Rule 10b-5) of the Securities Exchange Act of 1934.  (¶¶ 155-59.)  Such a claim must establish that each defendant (i) made a material misstatement or an omission of a material fact; (ii) with scienter; (iii) in connection with the purchase or sale of a security; (iv) upon which the plaintiff reasonably relied; and that (v) the alleged fraud caused plaintiff's loss. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 236 (3d Cir. 2004).

2

Section 10(b) claims must satisfy the heightened pleading requirements of the PSLRA. "One of Congress' objectives in enacting the PSLRA was to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis." *Id.* at 246. The PSLRA thus "establish[es] a . . . uniform and stringent pleading requirement." *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 299 (D.N.J. 2001) (quotation omitted). In addition to the requirements of Rule 9(b),[2] *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1328 (3d Cir. 2002), the PSLRA requires that a plaintiff "state with particularity" (i) each statement alleged to violate Section 10(b) and "the reason or reasons why the statement is misleading," as well as (ii) the facts giving rise to "*a strong inference*" that each defendant acted with fraudulent intent (or scienter), *see* 15 U.S.C. § 78u-4(b) (emphasis added). "If a complaint fails to comply with the PSLRA[] . . . dismissal is *mandatory*." *GSC Partners*, 368 F.3d at 237 (emphasis added).

Here, plaintiffs have not come close to stating a claim against Yucaipa or Mr. Burkle. Plaintiffs fail to allege that Yucaipa or Mr. Burkle (i) made *any* statement (much less a misleading one), (ii) had any disclosure duty or that their supposedly omitted takeover plan even existed, (iii) had a "strong" (or any) inference of scienter, or (iv) caused any shareholder loss.

### A. Plaintiffs Allege No Challenged Statements By Yucaipa or Mr. Burkle

Section 10(b) (and Rule 10b-5 thereunder) "prohibit[] '*mak[ing]* any untrue statements of material fact' in connection with the purchase or sale of securities." *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2299 (2011) (quoting 17 C.F.R. § 240.10-b5(b)) (emphasis added). Based on this text, the Supreme Court held in *Janus* that only those who "make" material false statements can be liable, and that a "maker" is limited to the person or entity to whom such a statement is attributed and who has "ultimate authority over the

---

[2] Rule 9(b) provides that "[i]n alleging fraud or mistake, the party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

3

statement, including its content and whether and how to communicate it." *Id. Janus* thus "sets the pleading bar even higher in private securities fraud actions seeking to hold defendants primarily liable for the misstatements of others." *Reese v. BP Exploration (Alaska) Inc.,* 643 F.3d 681, 694 n.8 (9th Cir. 2011).

On the facts of *Janus*, the Supreme Court upheld the dismissal of a Section 10(b) claim against Janus Capital Management ("JCM") which allegedly helped prepare a misleading prospectus issued by Janus Investment Fund ("JIF"), a related entity. *Janus*, 131 S. Ct. at 2304-05. The Court held that because the prospectus was issued by JIF, JIF made the challenged statements, and no claim could be stated against JCM because JCM "did not 'make' those statements." *Id.* at 2299, 2305; *accord Reese*, 643 F.3d at 694 n.8 (finding Janus "fatal" to a claim against an entity based on alleged misstatements in another entity's SEC filings).

The same result is warranted here, where neither Yucaipa nor Mr. Burkle is alleged to have made or had ultimate authority over any challenged statement. *See also Orlan v. Spongetech Delivery Sys. Inc.*, No. 10-CV-4093 (DLI) (JMA), 2012 U.S. Dist. LEXIS 44253, at *32 (E.D.N.Y. Mar. 29, 2012) (dismissing claim against defendant to whom no statements were attributed); *In re Textron, Inc.*, 811 F. Supp. 2d 564, 574 (D.R.I. 2011) (same); *City of Roseville Emps. Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 417 (S.D.N.Y. 2011) (same).[3]

### B. Plaintiffs Allege No Disclosure Duty or Actionable Omission By Yucaipa or Mr. Burkle

Plaintiffs suggest that Yucaipa and Mr. Burkle should somehow be liable because A&P's disclosures omitted Yucaipa's supposed plan to take control of the company. This

---

[3] Unable to challenge any statement attributable to Yucaipa or Mr. Burkle, plaintiffs apparently try to hold them liable for statements made by others by grouping Yucaipa and Burkle into an undifferentiated group of "Defendants." This tactic cannot salvage a claim because the Third Circuit has expressly rejected this sort of "group pleading." *See Winer Family Trust v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007).

theory fails because plaintiffs have pled no facts establishing (i) any disclosure duty by Yucaipa or Mr. Burkle and, in any case, (ii) no takeover plan that could have been disclosed.

### 1. Plaintiffs Allege No Disclosure Duty By Yucaipa or Mr. Burkle

It is black-letter law that Section 10(b) liability for an alleged omission "only attaches if there is a duty to disclose." *Ulferts v. Franklin Resources, Inc.*, 554 F. Supp. 2d 568, 574 (D.N.J. 2008) (Martini, J.); *accord Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5."). "Even non-disclosure of material information will not give rise to liability under Rule 10b-5 unless the defendant had an affirmative duty to disclose that information." *Oran v. Stafford*, 226 F.3d 275, 285 (3d Cir. 2000). The Third Circuit held in *Oran* that an affirmative duty to disclose may arise *only* in certain circumstances: "insider trading, a statute requiring disclosure, or an inaccurate, incomplete or misleading prior disclosure" for which the defendant is responsible. *Id.* at 285-86. "[T]he list describing the derivation of a duty to disclose in *Oran* is exclusive." *United States v. Schiff*, 602 F.3d 152, 163 (3d Cir. 2010).

The Amended Complaint alleges *none* of these circumstances as to Yucaipa or Mr. Burkle. There is no allegation of "insider trading": Yucaipa is not alleged to have sold *any* of its $115 million equity investment.[4] Plaintiffs cite no statute requiring disclosures by Yucaipa or Mr. Burkle.[5] Plaintiffs cite no disclosures by Yucaipa or Mr. Burkle, and offer no reason why

---

[4] Where a disclosure duty is based on "insider trading" it must "aris[e] from a relationship of trust and confidence between parties to a transaction." *Chiarella v. U.S.*, 445 U.S. 222, 230 (1980); *accord Dirks v. SEC*, 463 U.S. 646, 657-58 (1983). Here, of course, no such fiduciary relationship is alleged between Yucaipa and Mr. Burkle and A&P's shareholders. On the contrary, A&P disclosed that "Yucaipa may support strategies and directions for our Company which are in its best interests but which are opposed to other stakeholders." (A&P Form 10-Q at 63 (July 23, 2009), Lattimore Decl. Ex. B.) This is the opposite of a fiduciary duty.

[5] Of course, given its stock holdings in A&P, Yucaipa and certain affiliates filed Schedule 13Ds with the SEC. Plaintiffs, however, neither cite nor challenge the accuracy of those filings.

Yucaipa or Mr. Burkle—who were not on the board or in management of A&P—could somehow be responsible for *A&P's disclosures*. There is, in short, no disclosure duty alleged under *Oran* and, thus, no basis for a claim. *See Oran*, 226 F.3d at 286-87 (dismissing a claim where "[n]one of these circumstances were present"); *Winer Family Trust*, 503 F.3d at 329-30 (same); *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 414-16, 421-23 (D.N.J. 2010) (same).

### 2. Plaintiffs Allege No Plan By Yucaipa to Take Control of A&P

Even if plaintiffs had alleged a disclosure duty by Yucaipa and Mr. Burkle (which they have not), they have pled no facts establishing a secret plan to take control of A&P that could have been disclosed. Plaintiffs must, under the PSLRA, "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Accordingly, "[t]o plead a valid claim of securities fraud by omission, 'a plaintiff must show that the omitted information in fact existed at the time that the allegedly misleading statement was made.'" *In re NAHC, Inc. Sec. Litig.*, No. 00-4020, 2001 U.S. Dist. LEXIS 16754, at *35 (E.D. Pa. Oct. 17, 2001) (quoting *Zucker v. Quasha*, 891 F. Supp. 1010, 1017 (D.N.J. 1995), *aff'd*, 82 F.3d 408 (3d Cir. 1996)). Plaintiffs do not do so here.

The Amended Complaint asserts repeatedly, but in entirely conclusory fashion, that "Yucaipa was actually vying for control of A&P and planned to steer the company's reorganization . . ." (¶¶ 95(a), 119(a), 130(a)), and that Yucaipa insisted on the notes offering "so that it could position itself to take control of A&P in the event of a [bankruptcy]." (¶¶ 95(b), 119(b), 130(b).)[6] This theory is not only demonstrably wrong on the face of the Amended Complaint (plaintiffs concede that Yucaipa never gained control of A&P (¶¶ 79 n.6, 80)), but

---

[6] The equity investments by not only Yucaipa, but also by "A&P's existing majority shareholder," Tengelmann Warenhandelsgesellschaft KG, were conditioned on the notes offering, which was expressly disclosed by A&P—as plaintiffs acknowledge. (¶¶ 40, 86.)

there are also *no facts* pled—not one—detailing the plan or even suggesting that Yucaipa or Mr. Burkle ever had such a plan.  These sorts of fact-free allegations simply do not state a claim. *Derobbio v. Harvest Cmtys. of Sioux City, Inc.*, No. 01-1120 (MLC), 2002 U.S. Dist. LEXIS 26706, at *12 (D.N.J. Oct. 30, 2002) (dismissing claim because "[plaintiffs] have not shown that 'the omitted information in fact existed at the time that the allegedly misleading statements were made.'"); *NAHC,* 2001 U.S. Dist. LEXIS 16754, at *35 (same).  Indeed, even *pre*-PSLRA case law rejected omission-based claims when plaintiffs failed to allege facts establishing that the omitted information actually existed.  *See Zucker*, 891 F. Supp. at 1016 (dismissing claim because "the Court is at a loss to identify what information relating to return rates existed").

        Plaintiffs' only attempt to support their omission theory is a reference—in a footnote—to a single "Confidential Witness" or "CW1."  (¶ 43 & n.2.)  Citing CW1, Plaintiffs speculate that Mr. Burkle "appointed Defendant Brace to the board of directors [of A&P] because of his bankruptcy expertise, with the intention that Brace would manage A&P's eventual Chapter 11 bankruptcy, and steer the process in Burkle's favor."  (¶ 43.)  This hypothesis, of course, offers no facts about the supposed plan, what it may have involved, or whether it even existed.  But even if CW1 did make such allegations, the law is clear that "'allegations attributed to the information obtained from a confidential source must contain specific details regarding the basis for the source's personal knowledge and describe supporting events in detail.'"  *Nat'l Jr. Baseball League v. PharmaNet Dev. Group, Inc.*, 720 F. Supp. 2d 517, 538-39 (D.N.J. 2010) (quoting *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 290 (D.N.J. 2007)).  Assessing the sufficiency of confidential witness allegations is even more important where (as here) there is no documentary support for the confidential witness's assertions.  *See Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 148 (3d Cir. 2004).  "Where these requirements are not met, courts

must ignore the insufficiently described witness' statements for purposes of evaluating the plaintiff's allegations." *Nat'l Jr. Baseball League*, 720 F. Supp. 2d at 539.

Here, CW1 is not alleged to have ever worked for, spoken to, or had any contact whatsoever with Yucaipa or Mr. Burkle. He or she is certainly in no position to opine on their supposed "plan," and thus cannot support a claim as to Yucaipa or Mr. Burkle. *See, e.g.*, *Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323, 335 (S.D.N.Y. 2009) (rejecting CW allegations when "none [of the CWs] had any contact with either" defendant); *Nat'l Jr. Baseball League*, 720 F. Supp. 2d at 542-43 (rejecting multiple CW allegations that "fail to set forth the bases— where they obtained their information—for their statements"); *Intelligroup*, 527 F. Supp. 2d at 359 (rejecting CW allegations that "lack any dates on which the relevant information was acquired, [and] there are no facts detailing how [the CW] obtained access to the information").

The Amended Complaint should be dismissed for failure to allege any disclosure duty or actionable omission by Yucaipa or Mr. Burkle.

### C. Plaintiffs Allege No Facts Establishing a "Strong Inference" of Scienter Against Yucaipa or Mr. Burkle

#### 1. The PSLRA Requires Facts Establishing a "Strong Inference" of Scienter

"Scienter" for a securities fraud claim means, at a minimum, a showing of intent "that closely approaches . . . conscious deception." *In re Digital Island Sec. Litig.*, 357 F.3d 322, 332 (3d Cir. 2004). "In requiring a 'strong inference' of scienter, the PSLRA alters the normal operation of inferences under Fed. R. Civ. P. 12(b)(6)." *Id.* at 328-29; *accord GSC Partners*, 368 F.3d at 246; *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 531 n.5 (3d Cir. 1999). Under the PSLRA, "[a] mere reasonable inference is insufficient to survive a motion to dismiss." *Digital Island*, 357 F.3d at 328-29. Instead, to determine whether a plaintiff has pled a *strong*

8

inference of scienter under the PSLRA, the Supreme Court requires courts to weigh the "plausible nonculpable explanations for the defendant's conduct" against the "inferences favoring the plaintiff." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). A "strong inference" must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id*. at 314; *see id.* at 324 ("[T]he inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, and thus strong in light of other explanations."). Here, there are no facts supporting *any* inference of scienter as to Yucaipa and Mr. Burkle, much less a "strong" one.

### 2. Plaintiffs Allege No Facts Establishing Any Inference of Scienter as to Yucaipa or Mr. Burkle

Plaintiffs' theory of scienter as to Yucaipa and Mr. Burkle is based solely on motive: that they invested $115 million in A&P and drove the company into insolvency (losing their entire investment)[7] all out of a motive to "take control" of A&P in a bankruptcy proceeding. (¶¶ 5, 42, 72.) The Third Circuit, however, has held that such "motive and opportunity" pleading is "no longer . . . an independent route to scienter" in light of the Supreme Court's *Tellabs* decision. *Inst'l Investors Group v. Avaya, Inc.*, 564 F.3d 242, 277 (3d Cir. 2009). The scienter theory against Yucaipa and Mr. Burkle must be rejected for this reason alone. *See id.*; *Bird v. Moore Stephens P.C.*, No. 10-CV-1091 (DMC) (JAD), 2011 U.S. Dist. LEXIS 70071, at *16 (D.N.J. June 29, 2011) (finding no scienter, noting "an allegation of motive and opportunity to commit fraud is not sufficient in and of itself to create a strong inference of

---

[7] A&P's plan of reorganization, filed with the bankruptcy court, makes clear that all holders of equity in A&P had their interests extinguished in the bankruptcy. (*See* A&P's First Am. Joint Plan of Reorganization at 9, 31 (Arts. I(A)(78), III(C)(14)), Lattimore Decl. Ex. C.) A court can, of course, consider such court records on a motion to dismiss. *See, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

9

scienter"); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, Nos. 1658, 05-1151, 05-2367 (SRC), 2011 U.S. Dist. LEXIS 87578, at *105 (D.N.J. Aug. 8, 2011) (same).

But even if motive is considered as part of a broader scienter analysis, courts assume "that the defendant would act in his or her economic self-interest." *In re Digital Island Sec. Litig.,* 223 F. Supp. 2d 546, 554 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004). Here, however, plaintiffs ask this Court to infer the exact opposite—that Yucaipa and Mr. Burkle were motivated to commit a "fraud" that had as a key element destroying $115 million of their own equity. Courts routinely reject scienter theories that require an inference of such economic irrationality. The Third Circuit in *Digital Island* rejected as "mak[ing] little economic sense," and thus establishing no inference of scienter, allegations that a company's directors engaged in a fraud that would have caused "their own stock options [to be] devalued." 357 F.3d at 331. The Second Circuit in *Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001), similarly rejected allegations that corporate directors intentionally depressed their company's share price to make its acquisition price more attractive to another company, holding that because the theory "defies economic reason . . . it does not yield a reasonable inference of fraudulent intent." *Id.* at 140-41.

Even a case not subject to the PSLRA's heightened pleading standards, *Atlantic Gypsum Co. v. Lloyds Int'l Corp.,* 753 F. Supp. 505 (S.D.N.Y. 1990), rejected virtually the identical theory of fraud advanced in this case—that defendants invested in an entity "with the intention of driving it into the ground so that [defendants] could control the failed venture and then wait in line with other creditors in a bankruptcy proceeding"—holding that it "defie[d] economic reason, and therefore [did] not yield a reasonable inference of fraudulent intent." *Id*. at 514. The same is true here. There is no rational basis—and absolutely no factual basis pled—to infer that Yucaipa and Mr. Burkle engaged in a fraud in which they would destroy their own

10

$115 million investment in A&P, by driving it into bankruptcy, in order to gain control of A&P—especially when they never actually gained control. There simply is no inference of scienter as to Yucaipa or Mr. Burkle, a pleading failure that requires dismissal.

On the contrary, if their plan actually was to seek control of A&P through a bankruptcy, Yucaipa and Mr. Burkle certainly could have done so by acquiring securities senior in A&P's capital structure without flushing down the drain $115 million in common stock (at the bottom of the capital structure). Accordingly, far more compelling than any inference of fraud—and required to be considered under *Tellabs*—is that Yucaipa sought to assist A&P's turnaround efforts by investing substantial capital in A&P, A&P nevertheless became insolvent, and during the Chapter 11 proceedings Yucaipa received—with court approval—a post-bankruptcy minority interest.[8] Plaintiffs offer no reason why this nonculpable inference is not more compelling than their nonsensical theory of fraud—yet another basis for dismissal. *See Winer Family Trust*, 503 F.3d at 327-29, 332 (dismissing claim where inference of scienter "was not as compelling or as strong as the opposing [nonculpable] interest"); *In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 572 (E.D. Pa. 2009) (dismissing claim where "[p]laintiffs' theory does not make sense on the facts alleged, let alone present a cogent or compelling rationale for inferring scienter").

Plaintiffs' CW1 offers literally nothing on scienter. As discussed above, CW1 had no contact at all with Yucaipa or Mr. Burkle and thus has no basis to speculate on their states

---

[8] Yucaipa's post-bankruptcy minority interest in A&P came after it participated during the bankruptcy proceedings with other investors in a $490 million financing (¶ 79), which was approved by the federal bankruptcy court. That court expressly found that all of the "Investors'" interests in post-bankruptcy A&P—including Yucaipa's—were obtained "in good faith" (which is, of course, the opposite of fraudulent intent). (*See* Findings of Fact, Conclusions of Law and Order Confirming the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the U.S. Bankruptcy Code at ¶¶ 43, 56-57, 81-82, Lattimore Decl. Ex. D; *see also id.* at 1 n.2; A&P's First Am. Joint Plan of Reorganization at 9 (Art. I(A)(81)), Lattimore Decl. Ex. C (defining "Investors" to include the relevant Yucaipa entitites).)

of mind or knowledge of an alleged fraud or purported misstatements by others. CW1's assertions cannot, as a matter of law, give rise to any inference of their scienter. *See Nat'l Jr. Baseball League*, 720 F. Supp. 2d at 555 (CW statements cannot establish scienter where "not one witness claims to have met, emailed with, spoken to or otherwise heard or read anything by" defendants); *Campo*, 635 F. Supp. 2d at 335 ("A reasonable person could not infer [scienter when] . . . none [of the CWs] had any contact with either" defendant).[9]

Plaintiffs' utter failure to plead facts giving rise to any inference of scienter is an independent basis to dismiss their claims against Yucaipa and Mr. Burkle.[10]

### D. Plaintiffs Do Not Allege The Required Element of "Loss Causation"

Plaintiffs have not, as to Yucaipa and Mr. Burkle, pled "'loss causation' *i.e.*, a causal connection between the material misrepresentation and the [plaintiff's] loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Loss causation is a required element of Section 10(b) claims, *GSC Partners*, 368 F.3d at 236, and is typically shown through a "corrective disclosure" revealing to the market a fraud previously concealed resulting in a stock price decline attributable to the alleged fraud, *see In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 634 n. 17 (3d Cir. 2011). To adequately plead loss causation, a plaintiff must allege "'that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered,' *i.e.*, that the misstatement or omission concealed something from the market that, *when disclosed*, negatively affected the value of the security." *In re Tellium, Inc. Sec. Litig.*, No. 02-cv-5878, 2005 U.S.

---

[9] In addition, plaintiffs' conclusory assertions (¶¶ 46-47) as to Yucaipa and Mr. Burkle's supposed knowledge regarding a different company, Pathmark, lack any merit. Apparently, the suggestion is that Yucaipa and Mr. Burkle knew that A&P had acquired a deeply troubled company in Pathmark—yet decided to invest $115 million in A&P anyway. This, like plaintiffs' other allegations as to Yucaipa and Mr. Burkle, makes no sense.

[10] To the extent plaintiffs attempt to plead scienter through allegations against "Defendants," such "group pleading" has been rejected by the Third Circuit, as noted above.

Dist. LEXIS 26332, at *11 (D.N.J. Aug. 26, 2005) (emphasis added) (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005)).

Plaintiffs do not and cannot make any such allegation here as to Yucaipa or Mr. Burkle. Nothing in the Amended Complaint shows that the plan asserted against Yucaipa and Mr. Burkle—that they invested in A&P and drove it into bankruptcy in order to take control of it—was ever revealed to the market, much less caused plaintiffs' loss. To the extent plaintiffs lost money, they lost it for the same reason Yucaipa lost its $115 million investment—A&P went bankrupt—not because of any revelation of alleged misconduct by Yucaipa or Mr. Burkle.

Securities fraud claims are regularly dismissed for failure to plead that the revelation to the market of the alleged fraud caused the stock price decline and plaintiffs' loss. In *Tellium*, for example, Judge Wolfson dismissed on loss causation grounds allegations that a company's revenue projections were false because plaintiffs "failed to allege that the concealed scheme was *ever* disclosed to the market, thereby affecting the price of Tellium's stock." *Id.* at *12 (emphasis in original). The same result is warranted here. *See also Nat'l Jr. Baseball League*, 720 F. Supp. 2d at 561 (dismissing claim on loss causation grounds where "noticeably absent is any assertion that any wrongdoing was disclosed to the market. In fact, none of the announcements made by Defendants mention any alleged fraudulent practices.").

## II.  THE SECTION 20(A) CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

A "controlling person" claim under Section 20(a) must have as its predicate an independent violation of the Securities Exchange Act. *See Advanta*, 180 F.3d at 541. Here, because plaintiffs cannot (for the reasons discussed above) state a Section 10(b) claim, there can be no Section 20(a) claim. Moreover, plaintiffs have not even adequately pled "control" by Yucaipa or Mr. Burkle to support a Section 20(a) claim. *See Laven v. Flanagan*, 695 F. Supp.

13

800, 808 (D.N.J. 1988) (requiring control over a "specific transaction[] or activity upon which primary violation is predicated"). Nor can they allege such control based on Yucaipa's equity investment in A&P: "The mere fact of stock ownership does not transform an individual into a controlling person for purposes of liability under section[] . . . 20(a)." *Copland v. Grumet*, No. 96-3351 (MLP), 1998 U.S. Dist. LEXIS 22466, at *15 (D.N.J. Jan. 9, 1998).

### III. THE CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs filed their first complaint on September 9, 2011. On March 16, 2012, more than six months later and following "an investigation of Plaintiffs' counsel," they filed their Amended Complaint. (Am. Compl. at 1.) The Amended Complaint, for the reasons discussed above, does not come close to stating a claim against Yucaipa or Mr. Burkle. There is no reason to believe that, if given another bite at the apple, plaintiffs could fare any better. The Amended Complaint should be dismissed with prejudice. *See In re Alpharma Inc. Sec. Litig*, 372 F.3d 137, 153-54 (3d Cir. 2004) (affirming dismissal of first amended complaint with prejudice); *Oran v. Stafford*, 34 F. Supp. 2d 906, 913-14 (D.N.J. 1999) (dismissing amended complaint with prejudice), *aff'd*, 226 F.3d 275 (3d Cir. 2000).

## **Conclusion**

For the foregoing reasons, as well as those in the other defendants' submissions, Yucaipa and Mr. Burkle request that this Court dismiss with prejudice the claims against them.

Dated:  June 22, 2012

Respectfully submitted,

LATHAM & WATKINS LLP

By:  _s/ Jason B. Lattimore_ _____
       Jason B. Lattimore

One Newark Center, 16th Floor
Newark, New Jersey  07101
(973) 639-1234

James E. Brandt (*pro hac vice*)
Jeff G. Hammel (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
(212) 906-1200

*Attorneys for Defendants*
*The Yucaipa Companies, LLC and*
*Ronald Burkle*